Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8667 | **DATE** | 8/15/2002 |
| **CASE TITLE** | Robert Bowman vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#9] is denied; the Commissioner's Motion for Summary Judgment [#14] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 16 2002 date docketed | 17 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/15/2002 date mailed notice | |
| | courtroom deputy's initials FT/*sey* | | FT mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT P. BOWMAN, | ) | Case No. 01 C 8667 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Arlander Keys |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
AUG 1 6 2002

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Robert P. Bowman, moves the Court for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. The Defendant, Commissioner of Social Security (the "Commissioner"), has filed a cross-motion for summary judgment. For the reasons set forth below, Mr. Bowman's motion is denied, and the Commissioner's motion is granted.

## PROCEDURAL HISTORY

Mr. Bowman has exhausted his administrative remedies with the Social Security Administration (the "SSA") and asks the Court to declare unconstitutional, either on its face or as applied to him, the Windfall Elimination Provision of the Social Security Act, 42 U.S.C. § 415(a)(7)(2002)(the "WEP"). The procedural history of this case is as follows:

17

Mr. Bowman filed an application for social security retirement benefits on January 16, 1998. (R. at 25.) Mr. Bowman received a notice of award from the SSA, informing him that his social security benefits are subject to the WEP and were, therefore, reduced, because he was simultaneously entitled to social security benefits and a pension based on noncovered employment. (R. at 43.) Mr. Bowman filed a timely request for reconsideration with the SSA. (R. at 8.) However, the SSA affirmed its decision. (R. at 50.) Thereafter, Mr. Bowman requested, and was granted, a hearing before an administrative law judge (the "ALJ"). (R. at 62.) On February 16, 2000, the ALJ held that the SSA properly calculated Mr. Bowman's social security benefits. (R. at 24.) The Appeals Council denied Mr. Bowman's request for review of the ALJ's decision. (R. at 2.) Therefore, the ALJ's decision is the final determination of the Commissioner.

Mr. Bowman seeks the Court's review of the ALJ's decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Additionally, Mr. Bowman asks this Court to find that the WEP is violative of the Equal Protection Clause of the Fourteenth Amendment and should be declared unconstitutional.[1]

---

[1] Mr. Bowman, filing pro se, never specifically refers to either the Fourteenth Amendment or the Equal Protection Clause in any of his filings with the SSA or with the Court.
(continued...)

2

(Pl.'s Mot. Summ. J. at 1; Pl.'s Resp. Def.'s Mot. Summ. J. at 1.) In the alternative, Mr. Bowman asks the Court to find that, on the basis of "equity and fairness," the WEP should not be applied to him and that his social security benefits should not be reduced. (Pl.'s Mot. Summ. J. at 1.)

**STATEMENT OF FACTS**

Mr. Bowman worked for the Cook County Department of Public Aid, (the "CCDPA") from September 11, 1959 through December 31, 1973. (R. at 8.) In approximately January 1974, the CCDPA merged into the Illinois Department of Public Aid (the "IDPA"). (Id.) Thereafter, Mr. Bowman was employed by the IDPA from January 1, 1974 to December 1997. (R. at 30.)

As an employee of the CCDPA, Mr. Bowman did not pay social security taxes, and therefore, his earnings from the CCDPA were from noncovered employment. (R. at 52, 72.) Prior to the merger of the CCDPA into the IDPA, Mr. Bowman had the choice to either participate in the social security program through the IDPA or to continue to refrain from participating in the social security

---

[1](...continued)
However, the Court assumes that Mr. Bowman raises a Fourteenth Amendment claim by asserting that he is being denied "equal protection of the laws." (See, generally, Pl.'s Resp. Def's Mot. Summ. J.) Thus, the Court will hereinafter analyze this case as a Fourteenth Amendment Equal Protection claim.

3

system. (R. at 72-73.) Mr. Bowman chose to participate in the social security system, thus, his earnings from his employment with the IDPA were from covered employment. (R. at 73.)

Mr. Bowman was born on October 7, 1933. (R. at 25.) On January 1, 1988, Mr. Bowman was eligible to retire and receive his CCDPA pension, because he was over 55 years of age. (R. at 14.) Prior to January 1, 1988, former CCDPA employees must have been at least 55 years old to be eligible to receive their pensions. (Id.) However, the age requirement changed, effective January 1, 1988, allowing employees to now retire and receive their CCDPA pension at age 50 if they had 10 years of service with the CCDPA. (Id.)

Mr. Bowman currently receives two pensions. (R. at 28, 30.) One pension is paid to him based on his covered employment with the IDPA from January 1974 through December 1997. (R. at 20, 52.) The other pension is paid to him for his noncovered employment with the CCDPA from September 1959 through December 1973. (R. at 20, 28, 52.)

Mr. Bowman became entitled to social security benefits beginning in February 1998. (R. at 12). His benefit amount was $996 per month - an amount that was reduced, because the SSA found that he was entitled to both social security benefits and a pension based on noncovered employment, or earnings that were not covered by social security. (Id.)

4

At the hearing before the ALJ, Mr. Bowman did not contest that, on its face, the WEP applied to him nor does he contend that the SSA incorrectly calculated his Social security benefits based on the WEP. (R. at 80-83.) Mr. Bowman admitted that he was ineligible to retire and receive his pension from CCDPA prior to January 1, 1988. (R. at 82-83.) Mr. Bowman reasserted his contention that the WEP is generally an "unfair" and "wrong" law – especially as applied to him and similarly situated individuals receiving both covered social security benefits and a government pension. (R. at 41-42.) The ALJ concluded that he did not have the authority to determine the constitutional validity of the WEP, which the ALJ concluded was the actual remedy Mr. Bowman sought, and informed Mr. Bowman that constitutional issues could only be brought before a federal district court. (R. at 22.) The ALJ ultimately ruled that the SSA did not incorrectly calculate Mr. Bowman's social security benefits, and found that the WEP applied in Mr. Bowman's case based on the ALJ's findings that Mr. Bowman was entitled to both social security benefits and a pension from noncovered employment. (R. at 24.)

## STANDARD OF REVIEW

The Commissioner's duty is to interpret and apply the Social Security Act (the "Act"). *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1984). The Court will uphold the ALJ's decision if the decision

5

is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992).

**WINDFALL ELIMINATION PROVISION**

The WEP reduces the amount of social security benefits to individuals who are entitled to both social security benefits based on covered employment and a pension from a government entity based on noncovered employment. 42 U.S.C. § 415(a)(7)(2002). The WEP only applies to those individuals who became entitled to their government pensions after 1985. *Id.*

Congress enacted the WEP in order to eliminate the windfall that arises when individuals "split their careers between employment in which their earnings were taxed for social security and other employment, such as [government] employment, in which their earnings were exempt from social security." *Rudykoff v. Apfel*, 193 F.3d 579,580-81 (2nd. Cir. 1999). Congress reasoned that an overlap of benefits would occur, because the civil service pensions paid to government employees "are generally designed to take the place both of social security and a private pension plan for workers who remain in government employment throughout their careers." H.R. REP. NO. 25, at 21-22 (1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 239-40.

6

**DISCUSSION**

Mr. Bowman sets forth a host of reasons why he believes the WEP is unconstitutional. For example, he asserts that the WEP does not "apply uniformly to all people in similar circumstances, but arbitrarily exempts some groups" from its application. (R. at 10.) He notes that the WEP applies to government employees only and not to individuals with pensions from private sector employment. (R. at 9.) In addition, Mr. Bowman contends that the WEP is discriminatory, because individuals who would otherwise be subject to the WEP are exempt if they receive a pension from railroad work or if they were hired after December 31, 1983. (Id.) In addition, Mr. Bowman argues that the "substantial earnings rule" of the WEP, which lessens the reduction of one's social security benefits, does not equally weigh social security taxes paid in earlier years, which were low, against social security taxes paid in later years, which are very high. (Id.) Thus, Mr. Bowman argues that the "substantial earnings rule" is "flagrantly unfair and arbitrary." (Id.)

Social security benefits are not property rights or contractual rights, and Congress may "alter, amend, or repeal any provision" of the Social Security Act (the "Act"). *Flemming v. Nestor*, 363 U.S. 603, 611 (1960)(internal citations omitted); *United States R.R. Retire. Bd. v. Fritz*, 449 U.S. 166, 174 (1980).

7

However, Congress is prohibited from enacting any provisions under the Act, which would result in withholding benefits to an individual, that create "a patently arbitrary classification, utterly lacking in rational justification." *Id.*

Thus, the Court will uphold a classification under the Act as consistent with the Equal Protection Clause of the Fourteenth Amendment if it is "rationally based and free from invidious discrimination." *Dandridge v. Williams*, 397 U.S. 471, 487 (1970). The Supreme Court has held that, as long as "the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Id.* (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911)). Federal courts do not have the power under the Fourteenth Amendment to "second-guess" a state's allocation of funds for public or social welfare programs. *Dandridge*, 397 U.S. at 485.

Neither the United States Supreme Court nor the Seventh Circuit has ruled on the issue of the WEP's constitutionality, therefore, this issue is one of first impression in this circuit. However, under similar circumstances, both the Ninth and the Second Circuits have held that the WEP withstands constitutional scrutiny.

In *Das v. Department of Health & Human Services*, 17 F.3d 1250, 1255 (9th Cir. 1994), the Ninth Circuit held that the WEP is

rationally related to the legitimate goals of the legislature. The plaintiff in *Das* worked for the government, earned noncovered wages and was eligible for a federal pension. *Id.* at 1253. He also worked in the private sector for a substantial number of years, where his wages were covered by the social security program. *Id.* The plaintiff alleged that the reduction in his social security benefits pursuant to the WEP denied him equal protection of the law, because the WEP treats differently individuals who have similar aggregate lifetime earnings. *Id.* at 1255. The Court held that the legislature had a legitimate purpose of preventing a windfall to those individuals entitled to receive pensions for noncovered employment as well as social security benefits for covered employment. *Id.*

The Second Circuit arrived at the same conclusion as the Ninth Circuit in holding that the WEP withstands constitutional scrutiny. *Rudykoff v. Apfel*, 193 F.3d 579, 581 (2nd Cir. 1999). Quoting the language in *Das*, the Second Circuit ruled that the WEP rationally furthered the legislature's legitimate goal of eliminating the windfall to individuals who would receive social security benefits and "pensions based on both covered and noncovered employment." *Rudykoff*, 193 F.3d at 581 (quoting *Das*, 17 F.3d at 1255). The plaintiff in *Rudykoff* was entitled to both a government pension and social security benefits from his covered employment in the private

9

sector. 193 F.3d at 580. He alleged that the WEP was unconstitutional, because it discriminated against federal employees. *Id.*

Consistent with the findings of both the Ninth and Second Circuits, this Court finds that the WEP survives rational basis scrutiny. The legislature's desire to eliminate the overlap of retirement benefits that would occur when a government employee receives both a civil service pension and social security benefits for private sector employment is a legitimate goal. The WEP is rationally related to that goal by preventing government employees from obtaining a windfall of retirement benefits that individuals in the private sector typically do not receive. Further, the treatment of government employees is not irrational, because civil service pensions were designed to take the place of, not supplement, social security and private pensions for those individuals remaining in government employment throughout their careers.

The Court cannot second-guess Congress's decision to exempt certain individuals, such as railroad workers, from the WEP's application. In the absence of invidious discrimination or irrational classification of individuals who are not subject to exemption, the Court cannot conclude that the WEP, or its exemptions, violate the Fourteenth Amendment's Equal Protection

10

Clause.

Further, the Court does not find that the "substantial earnings rule" is arbitrary or discriminatory. The purpose of the "substantial earnings rule" is to lessen the burden on individuals whose social security benefits were subject to the WEP. 42 U.S.C. § 415 (2002). Although it appears that social security earnings from earlier years are weighted differently than social security earnings from later years, the Court reminds Mr. Bowman that the WEP need not be perfect. The "substantial earnings rule" need not result in "mathematical nicety" in order to withstand constitutional scrutiny.

Mr. Bowman contends that the WEP should not be applied to his social security benefits, even if the Court ultimately concludes that the WEP is constitutional. (R. at 11.) Mr. Bowman argues that it is unfair to reduce his social security benefits, because when he opted to contribute to social security in 1974, the WEP did not exist. (Id.) Mr. Bowman further contends that, had he been eligible for his CCDPA pension before 1985, he would have fallen under a WEP exemption. (Id.) He finds particularly vexing that CCDPA changed its rule in 1988 and allowed for pensions at age 50. (Id.) Mr. Bowman argues that, under the CCDPA's new law, he would have met the requirements for retirement as early as 1983 and would not be currently subject to the WEP. (Id.)

The Court rejects Mr. Bowman's arguments that the WEP should not be applied to him. Congress was within its right to enact the WEP, and although the provision is disadvantageous to Mr. Bowman, the WEP was in place at the time he was first entitled to his CCDPA pension in 1988, and therefore must be applied to him. Further, the CCDPA lawfully altered its age eligibility requirement for pensions after Mr. Bowman had already been deemed eligible for a pension on January 1, 1988. Although the Court sympathizes with Mr. Bowman's plight, the Court does not find any invidious discrimination against Mr. Bowman, and as stated above, the WEP does not create a patently arbitrary classification. Undoubtedly, other individuals have found themselves in the same position as Mr. Bowman when the CCDPA changed its retirement date to 1983. However, neither those individuals nor Mr. Bowman can rectify the matter by seeking to have the CCDPA retroactively apply to them or to have the WEP declared unconstitutional.[2]

---

[2] The Court ends its analysis here and declines to review the ALJ's opinion. Mr. Bowman's own admission that, on its face, the WEP applies to him and that the SSA correctly calculated his social security benefits using the modified WEP formula, obviates the necessity for the Court to review the ALJ's decision on these uncontested matters. Further, Mr. Bowman's Motion for Summary Judgment does not raise any objections to the ALJ's findings or ultimate conclusions. Therefore, the constitutional issues are the only issues properly before the Court. However, for procedural purposes, the Court hereby affirms the ALJ's decision.

## CONCLUSION

The Court holds that the WEP is rationally related to a legitimate government purpose, and thus, does not violate the Equal Protection Clause of the Fourteenth Amendment. Therefore, the WEP is constitutional, both on its face and as applied in Mr. Bowman's situation.

**IT IS HEREBY ORDERED** that Mr. Bowman's Motion for Summary Judgment be, and the same hereby is, **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's Motion for Summary Judgment be, and the same hereby is, **GRANTED**.

DATED: August 15, 2002     E N T E R:

_____
ARLANDER KEYS
United States Magistrate Judge

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Robert Bowman                          **JUDGMENT IN A CIVIL CASE**

       v.                                    Case Number: 01 C 8667

Jo Anne Barnhart

☐     Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☐     Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff's motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted.

                                                         Michael W. Dobbins, Clerk of Court

Date: 8/15/2002

                                                         Alicia Castillo, Deputy Clerk